UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Matt Cooper,  Case No. 3:16-cv-1698

          Plaintiff

   v.  MEMORANDUM OPINION

Toledo Area Sanitary District,

          Defendant

This matter is before me on the Defendant's motion to dismiss (Doc. No. 13) pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff's opposition (Doc. No. 29), and Defendant's reply (Doc. 32). In addition, the Plaintiff's motion to strike portions of Paul Bauman's affidavit (Doc. No. 26) is also at issue.

**BRIEF BACKGROUND**

Plaintiff Matt Cooper brings this action against the Toledo Area Sanitary District seeking declaratory and injunctive relief for alleged violations of the Clean Water Act, 33 U.S.C. § 1365(a), the Ohio Water Pollution Control Act, 33 U.S.C. § 1251 et seq., and Ohio Rev. Code § 6111. (Doc. No. 1 at ¶ 81). The Plaintiff contends the Defendant failed to comply with the National Pollution Discharge Elimination System, Permit No. OHG 870001, regarding the discharge of pesticides near or in the waters of the state.

In its motion, the Defendant seeks dismissal for lack of subject matter jurisdiction for three reasons. First, the Defendant contends Plaintiff did not meet the statutory notice requirements necessary to trigger federal jurisdiction under the Clean Water Act. Second, Defendant contends that because there are no current violations, the complaint is not redressable thereby undermining

the Plaintiff's standing to bring suit. Third, the Defendant argues its subsequent actions to correct any deficiencies render Plaintiff's claim moot. The Plaintiff vigorously contests the motion.

## APPLICABLE LEGAL STANDARD

The Sixth Circuit recently affirmed the standard of review in a motion to dismiss under Fed. R. Civ. P. 12(b)(1):

> "Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'come in two varieties: a facial attack or a factual attack.'" *Carrier v. Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). "A facial attack on the subject-matter jurisdiction" .... "questions the sufficiency of the pleading." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the complaint as true," just as in a Rule 12(b)(6) motion. *Id.* (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325). . . .
>
> A factual attack, on the other hand, raises a factual controversy requiring the district court to "weigh the conflicting evidence to arrival at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325).

*Wayside Church v. Van Buren County*, 847 F.3d 812, 816-17 (6th Cir. 2017).

In reviewing a factual challenge, a court may examine evidence, including evidence outside of the pleadings, of its power to hear a case. *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). It is axiomatic that the "[p]laintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* (Citation omitted).

## DISCUSSION

The Clean Water Act was enacted with the purpose of restoring and maintaining the chemical, physical and biological integrity of the nation's waters. 33 U.S.C. § 1251(a). "The Clean Water Act permits citizen suits 'against any person (including . . . any other governmental . . . agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of an effluent standard or limitation,' relevantly defined here as "a permit or condition thereof issued under [the NPDES program]." *Askins v. Ohio Dept. of Agriculture*, 809 F.3d 868, 872 (6th Cir. 2016) citing 33 U.S.C. § 1365(a)(1), (f)(6).

2

**Notice Requirements**

District courts have jurisdiction over citizen suits seeking enforcement of the Clean Water Act. 33 U.S.C. § 1365(a). A citizen suit must provide notice "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation or order. . . ." § 1365(b)(1)(A).

The contents of the notice are as follows:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The Sixth Circuit holds this notice requirement to be a "jurisdictional prerequisite" and noncompliance with this requirement requires dismissal. *Board of Trustees of Painesville Tp. v. City of Painesville, Ohio*, 200 F.3d 396, 400 (6th Cir. 1999).

There are two policy reasons for specificity in the notice of intent:

> [F]irst, such specific notice will allow government agencies to evaluate fully and adequately the violations alleged, and thereby to determine accurately their appropriate level of involvement in the matter; second, such specific notice will allow the recipient the opportunity to cure the violations before suit is brought, which may obviate the need for a costly lawsuit.

*Sierra Club Ohio Chapter v. City of Columbus*, 282 F.Supp.2d 756, 764 (S.D. Ohio 2003) citing *Frilling v. City of Anna*, 924 F.Supp. 821, 833 (S.D. Ohio 1996).

The Plaintiff's Notice of Intent, dated March 12, 2016, identifies the Defendant and its charge of covering over 300,000 acres. (Doc. No. 13-2, p.1). It then identifies U.S. EPA Product Labels for Duet and Mosquitomist. (*Id.*) The Notice then turns to the NPDES Permit at issue, specifically:

3

> Under the Pesticide General Permit, large-volume-chemical-pesticide polluters such as TASD must comply with the mandatory provisions of Part V, of the permit. TASD must publish a detailed Pesticide Discharge Management Plan (PDMP) designed to minimize the amount of chemical pesticides, **_IF ANY_**, that are discharged where "the pesticide will be unavoidably deposited to surface waters." The PDMP must document what non-toxic measures were taken and why they have failed prior to the discharge of any chemical pesticides. The PDMP must document what "action threshold" in the ecosystem needs to be reached that might allegedly necessitate the discharge of chemical pesticides in a "treatment area". The PDMP "must document why larviciding is not the primary pesticide to effectively manage mosquitos".
>
> Under Part IV, of the permit, TASD's Decision Maker must provide "information on each treatment area to which pesticides are discharged, including: . . . Action Thresholds. . . Method and/or data used to determine action threshold(s) has been met. . . Description of pest management measure(s) implemented prior to the first pesticide application . . . Quantity of each pesticide product applied to each treatment area . . . (and, among other things) Pesticide application dates(s)".
>
> Under Part VI.E. of the permit, TASD must "take all reasonable steps to minimize or prevent any discharge in violation of this permit that has a reasonable likelihood of adversely affecting human health or the environment."

(*Id.* at p. 2) (emphasis in original).

Next, the Notice explains the history in how a Mosquito Task Force came into being following a presentation by a TASD representative, noting "TASD's open violation of the Clean Water Act soon became clear." (*Id.* at pp. 2-3). As to the alleged violations in the Notice, the Plaintiff noted:

> At that time, between 2014 and 2015 "spray seasons", TASD had not yet begun to pretend that its spray decisions are based on any data. TASD hits each residential neighborhood with chemical pesticides at least three times per year. Densely-populated urban areas receive the most chemical pesticides. . . . .
>
> When June arrived, as usual, TASD's chemical-pesticide spray trucks began routine chemical-pesticide "treatments" throughout the county each night. . . . .
>
> In mid-June, Village of Ottawa Hills officials were told that TASD had unilaterally decided it would be spraying throughout our river valley and residential neighborhoods later on that very same day. Village officials were not provided any information about what "action threshold" had been breached. . . . .
>
> One morning, *without any warning*, I observed out my back window a TASD agent on foot releasing a poisonous mist onto the Ottawa River flood plan 100 yards or so from my back door and from the Ottawa River. This was especially distressing, not only because of the haunting image of an agent with a hazmat mask marching toward

my property discharging a cloud of billowing smoke across the "morning" flood
plain, but because I and at least two other neighbors residing nearby had given
TASD written notice that we did not want any poisons sprayed near our properties,
and we wanted to warned if they would be in our area.

(*Id.* at pp. 3-5) (emphasis in original).

The Defendant charges the lack of specificity as to the dates of TASD's violations fails to meet the specificity standard. I agree.

The failure to specify particular dates renders a notice of intent to file a citizen suit deficient. *Little v. Louisville Gas and Elec. Co.*, 33 F.Supp.3d 791, 806 (W.D. Ky. 2014) (allegation of regular violations insufficient in the absence of specific dates); *Sierra Club*, 282 F.Supp2d at 765-68, 775 (statements in notice letter vague, failed to provide information on dates and locations); *Frilling v. Honda of America Mfg., Inc.*, 1996 WL 1619348 at *6-7 (S.D. Ohio 1996) (allegations which were intermittent and occurred over a number of years did not meet the specificity requirement). Where, however, the notice alleges violations on a daily basis, it may be sufficient to meet the specificity requirement. *City of Ashtabula v. Norfolk Southern Corp.*, 633 F.Supp.2d 519, 525 (N.D. Ohio 2009). That is not the case in the Notice before this Court.

Plaintiff's reliance on the *Natural Resources Defense Council v. Southwest Marine Inc.*, 236 F.3d 985 (9th Cir. 2000), for support that a Notice letter is sufficient in light of no specific dates, is not persuasive as the Sixth Circuit has not adopted this more lenient standard.

Having carefully reviewed the March 12, 2016 Notice, I cannot find it comports with the strict statutory compliance required by the Sixth Circuit. *See Atlantic States Legal Found., Inc. v. United Musical Instr., U.S.A., Inc.*, 61 F.3d 473, 478 (6th Cir. 1995). Despite this determination, I also must determine whether the issues of standing and mootness preclude dismissal.

**<u>Standing and Mootness</u>**

As noted by the Sixth Circuit:

> "[S]tanding concerns only whether a plaintiff has a viable claim that a
> defendant's unlawful conduct 'was occurring at the time the complaint was filed.' "
> *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 525 (6th Cir. 2001), *cert.*

> *denied*, 535 U.S. 971, 122 S.Ct. 1438, 152 L.Ed.2d 382 (2002) (quoting *Laidlaw*, 528 U.S. at 184, 120 S.Ct. 693). "The Supreme Court has consistently held that jurisdiction is tested by the facts as they existed when the action [was] brought and that after vesting, it cannot be ousted by subsequent events." Id. at 524. To establish initial standing to bring suit, a plaintiff must demonstrate (1) he or she has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, as opposed to conjectural or hypothetical; (2) the injury is fairly traceable to the defendant's challenged action; and (3) it is likely, not speculative, that the injury will be redressed by a favorable decision. Id. at 523–24 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)).
>
> Mootness addresses whether the plaintiff continues to have an interest in the outcome of the litigation. *City of Parma*, 263 F.3d at 525. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). In other words, "[i]f events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give meaningful relief, then the case is moot and must be dismissed." *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir.2001).

*Ailor v. City of Maynardville, Tennessee*, 368 F.3d 578, 596 (6th Cir. 2004). The party invoking jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992).

Harm to aesthetic, environmental, or recreational interests will suffice to constitute injury-in-fact where the party seeking relief is among the injured. *Meister v. United States Dep't of Agriculture*, 623 F.3d 363, 369-70 (6th Cir. 2010). The Plaintiff's property is less than 200 feet from the Ottawa River. (Doc. No. 1 at ¶ 37). The complaint also states in pertinent part:

> 75. One morning in the summer of 2015, without any warning or notice, a TASD agent on foot was releasing mist into the Ottawa River Flood Plain 100 yards or so from Plaintiff's back door and from the Ottawa River. The discharge of a billowing cloud of pesticide by a person wearing a hazmat mask was surprising and disconcerting to the Plaintiff because Plaintiff and at least two other neighbors residing nearby had given TASD written notice that they did not want any chemical pesticides and wanted to be warned if TASD would be in the area.

Plaintiff's affidavit details what he believes are the impacts of these pesticides to the wildlife in his neighborhood as well as to the health of his family and community in general. (Doc. No. 29-1). I find these allegations constitute injury-in-fact for purposes of standing. *Friends of the Earth, Inc. v. Laidlaw Environmental Servs.*, 528 U.S. 167, 183 (2000).

Redressability, also challenged by the Defendants, is met by showing "some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. EPA*, 549 U.S. 497, 517-18 (2007).

After Defendant received notice of this lawsuit in July 2016, it drafted a Pesticide Discharge Maintenance Plan ("PDMP") which was approved by the Ohio EPA, albeit via a voicemail message. It is the Defendant's contention this action rendered the Plaintiff's complaint moot. I disagree.

The complaint contains one cause of action for a violation of the Clean Water Act and Ohio Water Pollution Control Act related to the spraying and discharging of pesticides:

> 81. For the reasons stated above and incorporated herein by reference, TASD's conduct in spraying and discharging pesticides, violates the Clean Water Act and the Ohio Water Pollution Control Act 33 USC § 1251, et. seq., and Ohio RC 6111 for the reason that TASD has not been and *is not in compliance* with the requirements of NPDES Permit No. OHG 870001.
>
> 82. TASD has filed and refused to meet its legal obligations to comply with NPDES Permit No. OHG 870001 as required by federal and state law, and unless enjoined by this Court the TASD, its officers, employees, and agents *will continue to discharge pesticides in violation of the law* that has been enacted for the protection of the public and citizens, including the Plaintiff, his family and his property, and Plaintiff is without an adequate remedy at law.

(Doc. No. 1, p. 15). (Emphasis added). At the time the lawsuit was initiated, the PDMP was not in existence and the complaint sufficiently alleges ongoing violations of NPDES Permit.

The mootness as to the allegations and compliance with the PDMP remain in question. I have reviewed the four-volume deposition of Mr. Bauman, Defendant's biologist, and find it does not establish with certainty that there is full compliance with NPDES permit or subsequent PDMP, at this juncture of the proceedings.

At present, it appears there continues to be a viable controversy to which the Plaintiff has demonstrated an injury-in-fact. The Defendant has not demonstrated that its subsequent actions have effectively mooted the dispute. Accordingly, I find the Defendant's motion to dismiss is denied.

7

## Conclusion

For the reasons stated above, the Defendant's motion to dismiss (Doc. No. 13) is denied. The Plaintiff's motion to strike (Doc. No. 26) is denied as moot.

So Ordered.

s/ Jeffrey J. Helmick  
United States District Judge