UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Matt Cooper,                                    Case No.  3:16-cv-1698

                    Plaintiff,

          v.                                    MEMORANDUM OPINION
                                                    AND ORDER

Toledo Area Sanitary District,

                    Defendant.

## I.  INTRODUCTION

Plaintiff Matt Cooper has filed a motion seeking summary judgment regarding: (a)

Defendant Toledo Area Sanitary District's ("TASD") liability for alleged violations of the Clean

Water Act; and (b) if TASD is held liable, whether TASD is required to pay a civil penalty, as well as

attorney fees and costs to Cooper as the prevailing party.  (Doc. No. 66).  Cooper also seeks

expedited discovery on the issue of whether TASD is continuing to violate the Clean Water Act.

(*See id.* at 17-18; Doc. No. 69 at 4-5).

TASD filed a brief in opposition, conceding it is liable for violating the Clean Water Act and

that Cooper is entitled to an award of reasonable attorney fees but arguing it should not be required

to pay a civil penalty and that further discovery is improper.  (Doc. No. 67).  Cooper has filed a brief

in reply.  (Doc. No. 69).

For the reasons stated below, I grant Cooper's motion in part and deny it in part.

## II.  BACKGROUND

The Sixth Circuit Court of Appeals summarized the factual and procedural background of

this case as follows:

> TASD is a political subdivision of the State of Ohio that operates in Toledo.  To
> control the mosquito population, TASD discharges pesticides by spraying and
> misting into communities and waterways throughout Lucas County.  According to
> the allegations in the complaint, TASD discharged over 1,000 gallons of pesticide in
> 2014 and over 3,000 gallons in 2015.
>
> The parties agree that TASD's pesticide discharges are subject to permitting
> requirements under the Federal Water Pollution Control Act, and the Ohio Water
> Pollution Control Act, 33 U.S.C. § 1251 et seq., and Ohio Rev. Code § 6111.
> Accordingly, TASD operates pursuant to a National Pollutant Discharge Elimination
> System ("NPDES") General Permit issued by the Ohio EPA.  The original permit,
> NPDES Permit No. OHG870001 (the "2011 Permit"), was issued October 17, 2011,
> became effective October 31, 2011, and expired by its terms on October 31, 2016.
> The 2011 Permit was the operative NPDES permit at the time the suit was filed.
> After this action began, the Ohio EPA issued a renewed permit, NPDES Permit No.
> OHG870002 (the "2017 Permit") (collectively with the 2011 Permit, the "General
> Permit"), effective January 1, 2017, which is set to expire December 31, 2021.
>
> In addition to the general requirements governing pesticide discharge, Part V of the
> General Permit imposes additional obligations on "applications greater than
> treatment area thresholds." . . . . For pesticides used for "Mosquitoes and Other
> Insect Pests," these conditions are triggered for any Permittee that applies pesticide
> to 6,400 acres of treatment area or greater. . . . As relevant here, Part V requires that
> polluters who are subject to its conditions prepare a Pesticide Discharge
> Management Plan ("PDMP") for the pest management area, which must document
> how the polluter will implement the Permit's effluent limitations.  It is undisputed
> that TASD was required to create a PDMP under the General Permit and that it did
> not do so until after this lawsuit was filed.
>
> On March 12, 2016, Cooper sent TASD a Notice of Intent to File Citizen Suit for
> Clean Water Act Enforcement expressing his intent to sue TASD under the citizen-
> suit provision of the Clean Water Act for TASD's failure to comply with its
> requirements under the General Permit.  The Notice stated that TASD "routinely
> discharges hundreds of gallons of chemical pesticides each year into residential
> neighborhoods and waterways covering 300,000+ acres of land." . . . It went on to
> state that "[u]nder the Pesticide General Permit, large-volume-chemical-pesticide
> polluters such as TASD must comply with the mandatory provisions of Part V of the
> permit. TASD must publish a detailed Pesticide Discharge Management Plan
> (PDMP)." . . . The Notice further provided that "[a]lthough TASD has been required
> to comply with the Pesticide General Permit since its effective date, October 2011,
> the people of Lucas County have yet to gain any benefit from this law." . . . The

2

Notice also set out additional General Permit requirements that it claimed TASD was violating and listed TASD's activities that Cooper claimed to be harmful.

TASD responded by letter on March 28, 2016, "disagree[ing] with the factual assertions in the Notice" and denying any violation of the General Permit. . . . After further correspondence, Cooper sent a final letter on August 5, 2015, addressed "Dear Judge," reiterating that TASD was violating the General Permit.  It stated that "TASD's massive toxic-chemical dispersal is governed, in part, by Part V of the permit, because they use pesticides to control mosquitoes covering more than 6400 acres of treatment area." . . .

Cooper filed this citizen suit on July 1, 2016, alleging that TASD was in violation of the General Permit because, *inter alia*, it failed to prepare and implement a PDMP. The complaint sought declaratory and injunctive relief, attorneys' fees and costs, and all other appropriate relief.  Following the commencement of this lawsuit, TASD prepared and submitted a PDMP.

TASD moved to dismiss the complaint for lack of subject matter jurisdiction. TASD argued that the pre-suit Notice, a mandatory condition precedent to bringing suit, was inadequate because Cooper failed to identify (1) the date of TASD's alleged violation, and (2) the conduct constituting the violation.  TASD also argued that, in light of its subsequent adoption of a PDMP, the district court was without jurisdiction either because Cooper no longer had standing or because the controversy was moot.

The district court agreed that the Notice was deficient because it failed to identify a specific date of the violation but, after rejecting TASD's standing and mootness arguments, denied the motion to dismiss.  TASD moved under Rule 59(e) to alter or amend the judgment, arguing that the failure to dismiss was a clear error of law in light of the district court's finding that the Notice was deficient.  The district court granted the motion and dismissed the case. Cooper appealed.

*Cooper v. Toledo Area Sanitary Dist.*, 797 F. App'x 920, 921-22 (6th Cir. 2019).

The Sixth Circuit reversed my dismissal of this case, concluding Cooper's March 12, 2016 Notice was sufficient to satisfy the pre-suit notice requirement and remanding the case for further proceedings.  *Id.* at 924.

Cooper argues he is entitled to summary judgment on the issue of whether TASD was in violation of the Clean Water Act because the evidence demonstrates TASD was not in compliance with Part V of the General Permit when Cooper filed suit.  (Doc. No. 66 at 6-7).  He also argues he is entitled to a declaration that he is the prevailing party under 33 U.S.C. § 1365(d) and therefore is

entitled to attorney fees. (*Id.* at 7-8). Finally, Cooper argues that I must determine whether it is appropriate to (i) award injunctive relief, (ii) enter civil penalties, and (iii) retain jurisdiction to monitor TASD's compliance with the General Permit and the Clean Water Act. (*Id.* at 9-16).

TASD concedes it was not in compliance with the General Permit at the time Cooper filed suit and, therefore, that Cooper is the prevailing party under § 1365(d). (Doc. No. 67 at 5-6). TASD argues, however, that Cooper only is entitled to fees "through the date on which TASD adopted the written PDMP." (*Id.* at 6). Further, TASD contends Cooper's claims become moot once I determine the amount of fees to which he is entitled. (*Id.* at 7). In TASD's view, its adoption of the PDMP fulfilled Cooper's request for injunctive relief. (*Id.* at 8). And, it argues, the adoption of the PDMP and the subsequent enforcement oversight of the PDMP by the Ohio EPA moots Cooper's claim for civil penalties because those events make it clear "'the allegedly wrongful behavior could not reasonably be expected to [recur].'" (*Id.* (quoting *Miss. River Revival, Inc. v. City of Minneapolis, Minn.*, 319 F.3d 1013, 1016 (8th Cir. 2003) (further citation omitted))).

### III.  STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

4

## IV.  ANALYSIS

### A.  PREVAILING PARTY AND COSTS OF LITIGATION AWARD

In cases like this one, which involve citizen lawsuits to enforce the Clean Water Act, "[t]he court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate."  33 U.S.C. § 1365(d). TASD concedes it was not in compliance with Part V of the General Permit at the time Cooper filed suit and, therefore, TASD was in violation of the General Permit.  (Doc. No. 67 at 5-6).

Thus, there is no dispute that Cooper is the prevailing party and eligible for an award of reasonable litigation costs, including attorney and expert witness fees.  *See Am. Canoe Ass'n, Inc. v. City of Louisa Water & Sewer Comm'n*, No. CIV.A. 01-99-ART, 2009 WL 8520576, at *10 (E.D. Ky. Feb. 27, 2009) ("Because liability under the Clean Water Act is a form of strict liability, the plaintiffs can prevail simply by showing that the City has violated its permit." (citing 33 U.S.C. § 1319(d) and *United States v. Winchester Mun. Utils.,* 944 F.2d 301, 304 (6th Cir. 1991))).

TASD asserts, however, that Cooper may only obtain the costs of litigation "through the date on which TASD adopted the written PDMP if [the Court] determines such award is appropriate."  (Doc. No. 67 at 6).  TASD does not explicitly offer a legal basis for this assertion and, to the extent TASD's assertion is tied to its argument that Cooper's claim for civil penalties is moot, I find it unpersuasive.  As I discuss in greater detail below, Cooper's civil penalties claim did not become moot when TASD adopted the PDMP.

### B.  MOOTNESS

TASD argues Cooper no longer has a legally cognizable interest in the outcome of the litigation once I award litigation costs, because he received the relief he requested in his complaint,

(Doc. No. 67 at 5-7), and that its "adoption and implementation of the PDMP moots Cooper[']s request for injunctive relief and a civil penalty." (*Id.* at 8).

Cooper sought "preliminary and injunctive relief to enjoin TASD and others in concert with TASD from continuing to discharge pesticides in violation of that law . . . ." (Doc. No. 1 at 16). I agree with TASD that Cooper's request for injunctive relief is moot. TASD has remedied "the 'activity alleged to constitute a violation' [of Part V of the General Permit] (failure to publish a PDMP) . . . ." *Cooper v. Toledo Area Sanitary Dist.*, 797 F. App'x at 924. Thus, this issue no longer is "'live,'" as Cooper already has received the relief he sought. *Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 596 (6th Cir. 2004) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

But the same is not true of Cooper's request for civil penalties. "[A] defendant's voluntary cessation of a challenged practice after the filing of suit, but before entry of judgment, should not deprive the court of the ability to impose civil penalties for violations of the [Clean Water] Act." *Tamaska v. City of Bluff City, Tenn.*, 26 F. App'x 482, 486 (6th Cir. 2002); *see also Am. Canoe Ass'n*, 2009 WL 8520576 at *10 (holding that, once a defendant becomes liable for violations of the Clean Water Act, "there can be no doubt that the [defendant] is liable for civil penalties").

TASD fails to address this line of authority at all, instead relying on an Eighth Circuit case, *Mississippi River Revival*, which interpreted the Supreme Court's decision in *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167 (2000). I conclude TASD fails to show it would be appropriate to rely on *Mississippi River Revival* as persuasive authority, as it is at odds with Sixth Circuit precedent and relies on a mistaken interpretation of *Laidlaw*.

In *Laidlaw*, several environmental organizations filed suit against a company which owned and operated an incinerator facility, which included a wastewater treatment plant, in South Carolina. After Laidlaw purchased the facility, the South Carolina Department of Health and Environmental Control ("DHEC") granted Laidlaw an NPDES permit authorizing Laidlaw to discharged treated

6

water into a nearby river.  *Laidlaw*, 528 U.S. at 176.  The NPDES permit contained limits on the

discharge of several pollutants, including mercury, and also imposed other regulations and reporting

obligations.  *Id.*  Laidlaw repeatedly exceeded the pollutant limitations,[1] despite some apparent

efforts to correct the issues.  *Id.*

In 1992, the plaintiffs sent Laidlaw a 60-day notice of intent to file a citizen suit under the

Clean Water Act.  *Id.*  Laidlaw, in turn, contacted the DHEC and arranged for the DHEC to file suit

against Laidlaw for the purpose of barring the plaintiffs' proposed citizen suit.  *Id.*  On the last day

before the 60-day notice period expired, "DHEC and Laidlaw reached a settlement requiring

Laidlaw to pay $100,000 in civil penalties and to make every effort to comply with its permit

obligations."  *Id.* (citation and internal quotation marks omitted).

The plaintiffs filed suit a few days later.  The district court subsequently concluded Laidlaw

had violated its permit and ordered Laidlaw to pay civil penalties in the amount of $405,800, as well

as attorney fees and costs to the plaintiffs.  *Id.* at 178.  The district court declined to grant injunctive

relief after concluding Laidlaw had come into substantial compliance with its NPDES permit

approximately two months after the plaintiffs had sued.  *Id.*

The parties cross-appealed.  The Fourth Circuit Court of Appeals affirmed the denial of

injunctive relief but vacated the award of civil penalties and attorney fees, concluding the case had

become moot because the only remedy available (the civil penalties) would not redress any injury the

plaintiffs suffered.  *See Friends of Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.,* 149 F.3d 303 (4th Cir.

1998).

The Supreme Court granted certiorari and reversed the Fourth Circuit's decision.  The Court

reiterated the "stringent" standard to be used to determine whether a defendant's voluntary

---

[1]  The district court concluded Laidlaw had violated the mercury limitations at least 489 times over
an eight-year period.  *See Laidlaw*, 528 U.S. at 176.

cessation of a challenged practice has rendered a case moot: "'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Laidlaw*, 528 U.S at 189 (quoting *United States v. Concentrated Phosphate Exp. Ass'n,* 393 U.S. 199, 203 (1968)). The Court then concluded there were disputed factual issues which prevented a determination as to whether the case had become moot and remanded the case for further proceedings. *Laidlaw*, 528 U.S. at 192-94.

A few years later, the Eighth Circuit Court of Appeals considered a case in which the plaintiffs alleged the defendants violated the Clean Water Act through their "continuing discharge of storm waters without NPDES storm water permits." *Miss. River Revival*, 319 F.3d at 1015. The defendant cities received their NPDES permits after the plaintiffs filed suit, and the district court dismissed the plaintiffs' claims, including their claim for civil penalties, as moot. *Id.* at 1014. After concluding *Laidlaw* had equated citizen suit claims for civil penalties and claims for injunctive relief for mootness purposes, *id.* at 1016 n.3, the Eighth Circuit affirmed, concluding the defendants' violations could not reasonably be expected to recur and, therefore, the defendants' conduct was a past violation for which the citizen plaintiffs could not obtain civil penalties.

But the *Laidlaw* Court expressly rejected the purported equivalence upon which the Eighth Circuit relied, stating civil penalties "may serve, <u>as an alternative to an injunction</u>, to deter future violations and thereby redress the injuries that prompted a citizen suitor to commence litigation." *Laidlaw*, 528 U.S. at 174 (emphasis added). *See also id.* at 193 ("Denial of injunctive relief does not necessarily mean that the district court has concluded there is no prospect of future violations for civil penalties to deter. Indeed, it meant no such thing in this case."); *id.* at 196 ("As the Courts of Appeals (other than the court below) have uniformly concluded, a polluter's voluntary postcomplaint cessation of an alleged violation will not moot a citizen-suit claim for civil penalties

8

even if it is sufficient to moot a related claim for injunctive or declaratory relief.") (Stevens, J., concurring).

Moreover, TASD arrived as a defendant in this litigation in far less forgiving factual circumstances than the defendants in *Mississippi River Revival*.  In that case, the defendant cities had timely filed NPDES permit applications after Congress had acted to amend the Clean Water Act to, in part, require municipalities to obtain NPDES permits for their storm sewer systems.  *Mississippi River Revival*, 319 F.3d at 1015.  But the state agency responsible for issuing the permits failed to do so in a timely manner, leading the plaintiffs to file suit.  *Id.*  Out of necessity, the cities had continued discharging storm water into the storm sewer systems despite not having an NPDES permit.

By contrast, TASD repeatedly chose to do "nothing" despite being notified that it was not in compliance with the plain terms of the General Permit.  (Doc. No. 29-3 at 92); (*see also id.* at 93-97).  Moreover, TASD seeks to shift the blame for its noncompliance to the Ohio EPA, asserting it "understood, from ongoing communications with, and reporting, to OEPA, that it was not required to produce a PDMP," and that the Ohio EPA "never raised the lack of a written PDMP with TASD."  (Doc. No. 67 at 4); (*see also id.* at 8 ("Finally, OEPA is now diligently enforcing the PDMP requirement . . . .")).

TASD contends it "cannot reasonably be expected to discard the PDMP following resolution of this lawsuit."  (Doc. No. 67 at 8).  But this assertion artificially narrows the scope of TASD's obligations under Part V of the General Permit.  The General Permit requires TASD not only to prepare and adopt a PDMP, but also to "keep the plan up-to-date thereafter for the duration of coverage under this general permit . . . ."  (Doc. No. 29-9 at 75).  TASD's assurance that it will not abandon its current PDMP addresses only part of its duties as identified in the General Permit and in Cooper's pre-suit notice.  (*Id.*; Doc. No. 13-2 at 2).  TASD's statement does not meet its "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected

9

to start up again . . . ." *Laidlaw*, 528 U.S. at 189 (quoting *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203).

While Cooper's request for injunctive relief is moot, I conclude TASD has failed to meet its "heavy burden" with respect to Cooper's request for civil penalties and, therefore, TASD is liable for civil penalties pursuant to § 1365(a).  The parties shall meet and confer regarding the appropriate civil penalties to be applied.

### C.    COOPER'S REQUEST FOR EXPEDITED DISCOVERY

Cooper also argues this Court has continuing jurisdiction to oversee TASD's compliance with the General Permit, (Doc. No. 66 at 8), and that I should order expedited discovery and a hearing "on the substantive issues remaining as to TASD's violations of the NPDES Permit."  (Doc. No. 68 at 4).  Cooper's arguments are not persuasive.

With respect to Cooper's request for discovery, the primary obstacle he faces is that the claim on which he seeks discovery is not part of this litigation.  Cooper previously sought to amend his complaint to add a claim alleging TASD's PDMP and its execution of that PDMP violated his Fourteenth Amendment substantive due process rights.  (*See* Doc. No. 48-1 at 16-17).  I denied Cooper's motion to amend as moot after I granted TASD's Rule 59 motion.  (Doc. No. 52 at 2).  While I granted Cooper leave to refile his proposed claim as a related action, (*id.*), he did not do so.

More to the point, for Cooper's jurisdictional arguments as well as his discovery-related arguments, § 1365's citizen suit authorization "is meant to supplement rather than to supplant governmental action."  *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987).  Unsatisfied with the Ohio EPA's oversight of the TASD, Cooper in effect urges this Court to assume the Ohio EPA's role.  He fails to demonstrate such "forced court oversight," (Doc. No. 66 at 8), is permissible on the factual and legal circumstances of this case.

## V.    CONCLUSION

For the reasons stated above, I grant Cooper's summary judgment motion in part and deny it in part.  (Doc. No. 66).

I conclude Cooper has demonstrated there is no genuine of dispute of material fact that he is the prevailing party under § 1365(d) and is entitled to attorney and expert witness fees in an amount to be determined.  I further conclude TASD is subject to the application of civil penalties under § 1365(a).  The parties shall meet and attempt to reach agreement concerning the appropriate amount of a civil penalty and attorney and expert witness fees.  The parties shall file a joint status report regarding the progress of their efforts on or before December 17, 2021.

Finally, I deny Cooper's request for additional discovery and deny his request for injunctive relief as moot.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge

11